## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Khadidja Issa; Q.M.H.**, a minor, individually, by and through his parent, Faisa Ahmed Abdalla **Alembe Dunia; Anyemu Dunia**; **V.N.I.**, a minor, individually by and through her parent Mar Ki; **Sui Hnem Sung; and all others similarly situated,**<br><br>          Plaintiffs,<br><br>     v.<br><br>**The School District of Lancaster,**<br><br>          Defendant. | Civil Action No. 16-cv-3881<br><br>HON. EDWARD G. SMITH<br><br>CLASS ACTION |

## <u>CONSENT DECREE</u>

**TABLE OF CONTENTS**                                    **Page**

DEFINITIONS……………………………………………………………… 1

INTRODUCTION ......................................................................................... 6

I.      ADMINISTRATIVE DIRECTIVE ..................................................... 7

II.     ENROLLMENT OF IMMIGRANT STUDENTS AGES 17-21 .......................... 7

III.    PLACEMENT OF NEWLY-ENROLLED IMMIGRANT STUDENTS
        AGES 17-21 ................................................................................. 9

IV.     NEW STAFF POSITIONS ................................................................ 12

V.      DUTY OF DISTRICT TO PROVIDE TRANSLATION AND
        INTERPRETATION SERVICES ....................................................... 12

VI.     COMPENSATORY EDUCATION ……………………………………13

VII.    FORMS ........................................................................................... 15

VIII.   CERTIFICATION OF TEACHERS .................................................. 15

IX.     DURATION OF THIS CONSENT DECREE ..................................... 16

X.      MONITORING AND REPORTING ................................................. 16

XI.     ENFORCEMENT .............................................................................. 18

XII.    NOTICE TO COUNSEL ................................................................... 19

XIII.   MODIFICATION .............................................................................. 19

XIV.    RESERVATION OF JURISDICTION ............................................... 19

XV.     RELEASE OF CLAIMS .................................................................... 20

XVI.    ATTORNEYS' FEES AND COSTS .................................................. 20

XVII.   NON-WAIVER PROVISIONS .......................................................... 21

XVIII.   ENTIRE AGREEMENT ........................................................................................ 21

XIX.   EXECUTION ........................................................................................................ 21

## DEFINITIONS

**Action** means *Issa, et al. v. School District of Lancaster*, Index No. 16-cv-3881, filed on July 19, 2016.

**Alternative education program** means any high school-level educational program serving students enrolled in the School District of Lancaster ("SDOL") that is (a) not located on the McCaskey Campus, or (b) provides an accelerated curriculum.

**Application Date** refers to the date on which an applicant for enrollment to SDOL completes an enrollment application form.

**Complaint** means the legal document filed by Named Plaintiffs on behalf of themselves and others similarly situated to initiate this Action.

**Defendant or District or SDOL** means the School District of Lancaster ("SDOL").

**Consent Decree** means the agreement between the Parties in the Action that is entered and so ordered by this Court.

**Effective Date** means the date the Court signs and enters the Consent Decree.

**English Learner** or **EL** means an individual who does not speak English as their native or primary language and has a limited ability to read, speak, write, or understand English.

**ESL** means English as a Second Language instruction.

**Immigrant** means any person between the ages of 17 to 21 who (a) was not born in any state of the United States of America defined to include the 50 States, the District of Columbia, and any U.S. territory (including Puerto Rico, Guam and Virgin Islands) and (b) as of the Application Date has not been attending one or more schools continuously in any one or more States for the preceding twelve (12) months.

**Immigrant EL Placement Form** means the appropriate document, included as Exhibits A through C to this Consent Decree, which shall be reviewed and signed by any student covered by this Consent Decree and a parent of such a student (unless the student is emancipated), following: (a) translation of the Form into the student's *and* parent's preferred language; and (b) a meeting between one or more District representatives and the student, the parent (unless the student is emancipated), and up to three additional individual(s) of the family's choice, which may include a caseworker or other individual as long as the parent (or the student if the student is 18 years of age or older) signs a form permitting the additional individuals access to the student's education records. The Form shall fully and fairly apprise the parent and student of the option to attend McCaskey, or voluntarily choose to attend Phoenix Academy.

**McCaskey** means any educational program physically located on the McCaskey Campus of the District at 1051 Lehigh Avenue, Lancaster PA, including, but not limited to, J.P. McCaskey High School and McCaskey East High School.

**Named Plaintiffs** means Khadidja Issa; Q.M.H., a minor, individually, by and through his parent, Faisa Ahmed Abdalla; V.N.I., a minor, individually by and through her parent Mar Ki; Sui Hnem Sung; Alembe Dunia; and Anyemu Dunia.

**Newcomer Program** refers to the educational program formerly known as the International School and located at McCaskey Campus, 1051 Lehigh Avenue.  The Newcomer Program is a one-year transition program for students who were not born in the United States of America and are WIDA Level I students.  All newly-enrolled immigrant students ages 17 to 21 with WIDA Level I proficiency will be placed into the Newcomer Program. Students in the Newcomer Program attend English as a Second Language (ESL) and "core subject" classes (mathematics, science and social studies) in a "sheltered environment" with their Newcomer Program peers.

Students in the Newcomer Program have full access to activities, sports, and extracurricular programs offered at the McCaskey Campus.  A student's English language proficiency will be assessed at the completion of each full 10-week marking period in the Newcomer Program.  An immigrant student age 17 to 21 in the Newcomer Program attaining WIDA Level II proficiency will transfer out of the Newcomer Program, and will have the option to either join a Small Learning Community on the McCaskey Campus or based on a knowing, voluntary decision to attend Phoenix Academy.

**Newly-enrolled** means never having been previously enrolled in the District.

**Over-aged and under-credited** means a student is not able to earn sufficient credits through the regular course of instruction at McCaskey (48-minute classes, 10 week marking periods and 180 days of instruction) to graduate by the end of the school term in which that student turns 21 years old. A student who is 17 years old at the time of enrollment in the District will have time to graduate from McCaskey, provided the student earns the 24 credits required for graduation. A student who is 18 years old at the time of enrollment may also be able to graduate from McCaskey, depending on birth date, enrollment date and the extent to which the student has obtained credits prior to and after enrollment.

**Parent** means a biological parent with legal custody rights or a legal guardian of an immigrant student aged 17 to 21.

**Parties** mean the Plaintiffs and Defendant in the Action.

**Phoenix Academy ("Phoenix")** means the accelerated credit-recovery educational program located at 630 Rockland Street, Lancaster, PA 17602, operated by or on behalf of SDOL, that educates, among others, students who are over-aged and under-credited and would not be able to graduate from McCaskey by the school term in which they turn 21 years of age.  Phoenix

provides an accelerated, semester-based credit recovery program for high school students, which means that students can earn credits toward high school graduation at a faster pace than at McCaskey.  Unlike McCaskey's Newcomer Program, Phoenix does not offer sheltered instruction in core subjects (mathematics, science and social studies), which means that English Learners may be placed in classes that include some native English speakers who are fluent in English and have lived their entire lives in the United States.  Phoenix is located approximately two (2) miles from the McCaskey Campus, and Phoenix provides its students with transportation to and from school.  Although Phoenix does not offer extracurricular programs, all Phoenix students are permitted to participate in the full array of extracurricular programs at McCaskey, and the District provides them with transportation to do so. Phoenix does not offer any Newcomer Program.

**School-age** means the period of an individual's life from the earliest admission age to a school district until the end of the school term in which a student reaches the age of 21 years.  *See* 22 Pa. Code § 11.12.

**School Term** means "school term" as defined by 24 P.S. § 1-102 of the Public School Code of 1949, "[t]he period of time elapsing between the opening of the public schools in the fall of one year and the closing of the public schools in the spring of the following year."

**School Year** means "school year" as defined by 24 P.S. § 1-102 of the Public School Code of 1949, "the first day of July of one year and the 30th day of June of the following year."

**Small Learning Community or SLC** means the instructional program offered at McCaskey Campus wherein students are assigned to small groups.  SLCs offer students a number of advantages: personalized learning, electives that match student interests, and targeted support. Students are provided with personal and individual teaching and learning opportunities based

-4-

on their career and personal goals.  At McCaskey, students choose (subject to availability) the SLC that best suits their interests and career goals.  Students have full access to activities, sports, and extracurricular programs offered at the McCaskey Campus.

**Student** means any immigrant student aged 17-21 years.

**WIDA Level I (Entering)** means the first level of English language proficiency as defined by WIDA (formerly known as World-class Instructional Design and Assessment) following the administration of W-APT test (current), WIDA screener or WIDA Model (soon to be implemented).

**WIDA Level II (Emerging)** shall mean the second level of English language proficiency as defined by WIDA (formerly known as World-class Instructional Design and Assessment) following the administration of W-APT test (current), WIDA screener or WIDA Model (soon to be implemented).

## INTRODUCTION

The Parties to this Consent Decree, by their attorneys, hereby stipulate and agree as follows:

WHEREAS, Named Plaintiffs Khadidja Issa; Q.M.H., a minor, individually, by and through his parent, Faisa Ahmed Abdalla; Alembe Dunia; Anyemu Dunia; V.N.I., a minor, individually by and through her parent Mar Ki; and Sui Hnem Sung ("Plaintiffs") filed, on behalf of themselves and similarly situated students, and Defendant SDOL has denied the Plaintiffs' allegations, and the Parties have voluntarily agreed to resolve the Action according to the terms set forth herein;

WHEREAS, the Named Plaintiffs filed the Class Action Complaint commencing the Action in the U.S. District Court for the Eastern District of Pennsylvania ("District Court") seeking preliminary injunctive relief to allow older immigrant students the opportunity to attend McCaskey, the regular public high school rather than being educated in an alternative accelerated program; and

WHEREAS, following expedited discovery and a five-day hearing, the District Court granted in part Plaintiffs' motion for preliminary injunction permitting the students to attend McCaskey High School and finding that the District violated the federal Equal Educational Opportunity Act, 20 U.S.C. § 1703(f) (EEOA), a ruling that was subsequently affirmed by the U.S. Court of Appeals for the Third Circuit;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, and the Parties do hereby stipulate and agree, as follows:

## I.  ADMINISTRATIVE DIRECTIVE

Within 20 days of entry of this Consent Decree, the District shall issue a written administrative directive stating that the District's practices and procedures shall conform to the terms of this Consent Decree.  This directive shall expressly set forth the following specific practices and procedures outlined below with regard to both enrollment and placement of students.

## II.  ENROLLMENT OF IMMIGRANT STUDENTS AGES 17-21

A.      The District shall comply with the following enrollment requirements for immigrant students aged 17 to 21, pursuant to Pennsylvania law, 22 Pa. Code § 11.11(b), (d) and (e), which are also included in the District's School Board Policy 200:

1.      The District shall normally enroll a child the next business day, but no later than 5 business days, after the Application Date if the parent, guardian or other person having control or charge of the student has completed the enrollment application and has supplied some proof of the child's age, residence, and immunizations as required by law.  Any one of the following constitutes acceptable documentation: birth certificate; notarized copy of birth certificate; baptismal certificate; copy of the record of baptism – notarized or duly certified and showing the date of birth; notarized statement from the parents or another relative indicating the date of birth; a valid passport; a prior school record indicating the date of birth; or I-94 Arrival-Departure Record. Upon enrollment, the District shall contact the student's former school and request a certified copy of the student's education records.  The District shall not, though, condition enrollment or delay a student's admission due to the absence of student records or other information or documents that are not required for enrollment in accordance

with guidance issued by the Pennsylvania Department of Education in its Basic Education Circular entitled Enrollment of Students, available at:

http://www.education.pa.gov/Documents/Codes%20and%20Regulations/Basic%20Education%20Circulars/Purdons%20Statutes/Enrollment%20of%20Students

       2.     The District shall administer a Home Language Survey ("HLS") to all students seeking first time enrollment.

       3.     The District shall not inquire regarding the immigration status of a student as part of the admission process, and shall not condition a child's right to enroll in the District upon the child's immigration status.

      B.     With regard to assessing the English language proficiency of newly-enrolled immigrant students aged 17-21, the District shall comply with guidance of the Pennsylvania Department of Education ("PDE") as reflected in Basic Education Circular 22 Pa. Code § 4.26, titled *Educating Students with Limited English Proficiency (LEP) and English Language Learners (ELL)*, or with any replacement Basic Education Circular issued by PDE during the term of this Consent Decree.

      C.     When immigrant students ages 17 to 21 present themselves to the District for the purpose of applying for enrollment, the District shall not initiate discussions about alternatives to enrollment (such as G.E.D. training or English language instruction not offered by the District), but may respond to inquiries about such alternatives and provide further information upon request.

### III.  PLACEMENT OF NEWLY-ENROLLED IMMIGRANT STUDENTS AGES 17-21

A.      **Newly-Enrolled WIDA Level I Immigrant Students -- Initial Placement**

All newly enrolled immigrant students ages 17 to 21 with WIDA Level I proficiency shall be placed into the Newcomer Program.

B.      **Transfer Options for Immigrant Students**

1.      **After Newcomer Program Students Attain WIDA Level II**

After achieving WIDA Level II status through the Newcomer Program, immigrant students ages 17-21 shall have the option to either: (i) enter into a Small Learning Community on the McCaskey Campus; or (ii) transfer to Phoenix Academy.  There shall be a meeting to discuss such options between one or more District representatives, the student, the parent(s) (unless the student is emancipated), and any three additional individuals of the family's choice, so long as the parent (or the student if the student is 18 years of age or older) has signed a form permitting the additional individuals access to the student's education records.  If Plaintiffs' counsel is to be one of the additional individuals selected by the family to attend the meeting, Plaintiffs' counsel shall provide at least 24-hour advance notice to the District's Solicitor, who shall not bar the participation of counsel or any individuals who seek to participate in the process.  The District shall provide an appropriate language interpreter (via phone or in-person) to discuss the options. A written notice and election form describing these options (Ex. A, Immigrant EL Placement Form for Students Who Have Achieved WIDA II Status and Are Leaving the Newcomer Program), translated into the student's and parent's preferred language(s) (unless the student is emancipated), shall be provided to the student and to the parent at least 3 days prior to the meeting, and the District shall have a copy of the translated form(s) available for review at the meeting.

### 2.      Additional Option – for  "Over-age Under-Credited" Newcomer Program Students Aged 19-21

Immigrant students ages 19-21 who have completed at least one full 10-week marking period in the Newcomer Program, but have not achieved WIDA II proficiency and who do not have sufficient credits to graduate from McCaskey by the completion of the school year in which they turn 21 years of age, shall have the additional option to either: (i) remain in the Newcomer Program at McCaskey until they attain WIDA II proficiency; or (ii) transfer to Phoenix Academy.  There shall be a meeting to discuss this additional option between one or more District representatives and the student, the parent(s) (unless the student is emancipated),  and any three additional individuals of the family's choice, so long as the parent (or the student if the student is 18 years of age or older) has signed a form permitting the additional individuals access to the student's education records.  If Plaintiffs' counsel is to be one of the additional individuals selected by the family to attend the meeting, Plaintiffs' counsel shall provide at least 24-hour advance notice to the District's Solicitor.  The District shall provide an appropriate language interpreter (via phone or in-person) to discuss the options.  A written notice and election form describing these options (Ex. B, Immigrant EL Placement Form for Students Ages 19-21 Following Completion of One Full Marking Period in the Newcomer Program), translated into the student's and parent's preferred language, shall be provided to the student and to the parent (unless the student is emancipated), at least 3 days prior to the meeting, and the District shall have a copy of the translated form available for review at the meeting.

### C.      Newly-Enrolled WIDA Level II Immigrant Students -- Initial Placement Options

Newly-enrolled immigrant students ages 17 to 21 with WIDA Level II proficiency shall be given the option to enter either: (i) a Small Learning Community on the McCaskey Campus;

or (ii) Phoenix Academy.  There shall be a meeting to discuss such options between one or more District representatives, the student and the parent(s) (unless the student is emancipated), and any additional individual of the family's choice, so long as the parent (or the student if the student is 18 years of age or older) has signed a form permitting the additional individual(s) access to the student's education records.  If Plaintiffs' counsel is to be one of the additional individuals selected by the family to attend the meeting, Plaintiffs' counsel shall provide at least 24-hour advance notice to the District's Solicitor.  The District shall provide an appropriate language interpreter (via phone or in-person) to discuss the options.  A written notice and election form describing these options (Ex. C, Immigrant EL Placement Form for Entering WIDA Level II Students), translated into the student's and parent's preferred language, shall be provided to the student and to the parent (unless the student is emancipated) prior to the meeting.  Such meeting shall occur as soon as is practicable but in no case longer than 4 days following completion of Application and the Home Language Survey and the identification of WIDA proficiency level, and the District shall have a copy of the translated form(s) available for review at the meeting. The student shall have up to two working days following the meeting to select an option.  If no option is timely selected the student shall be placed at McCaskey until an option is selected.

        **D.**      **<u>Parental Rights/Emancipated Minors</u>**

      With regard to all proposed options, a parent shall make the placement decision unless the student is an emancipated minor as defined by 22 Pa Code 11.11(a)(1).

        **E.**      **<u>No Discrimination from Programs/Regular Policies and Rules Apply/Age-Cohorts</u>**

      Immigrant students ages 17 to 21 may not be denied any educational opportunities for which they are otherwise eligible due to their age or national origin.  The District's regular policies and rules generally applicable to all students shall apply equally to immigrant students

ages 17 to 21.  Immigrant students ages 17 to 21 may not be isolated into separate classrooms by age or national origin, except that the District shall have the discretion to place immigrant students aged 19-21 on the McCaskey campus into "age-cohort" classes, so long as the cohort includes no fewer than five students in each class.

## IV.  NEW STAFF POSITIONS

The District agrees to maintain the following new staff positions throughout the duration of this Consent Decree.

A.      **"Enrollment Specialist,"** whose training and job duties shall include the enrollment and placement of immigrant students aged 17-21 in accordance with state and federal laws, District policies and this Consent Decree.

B.      **"Program Facilitator" for the Newcomer School,** a new position dedicated to provide an enhanced level of oversight and support for the Newcomer School, including overseeing and assessing curriculum, monitoring and evaluating students' progress toward WIDA II proficiency, and working with the Guidance Department to facilitate the development of a post-high school plan for all Newcomer School students. The position will also be a dedicated single point of contact and liaison between the Newcomer School and SDOL support services, including guidance and enrollment.

## V.  DUTY OF DISTRICT TO PROVIDE TRANSLATION AND INTERPRETATION SERVICES

A.      The District shall, in compliance with its general duties under state and federal laws, provide all EL students and LEP parents with interpretation services at all meetings relating to the student's enrollment and school placement and shall translate all documents relating to these meetings into the preferred language of both the student and parent.

# VI.  COMPENSATORY EDUCATION

A.      The District shall create a compensatory education program fund which shall not exceed the amount of $66,500, to be administered (at no cost to the District) by an appropriate person identified by Plaintiffs but approved by the District (the "Fund Administrator").

B.      Students shall be eligible to receive compensatory education program funds on an individual basis, as follows:

1.      Six Named Plaintiffs shall be eligible to receive $3,000 each (subtotal of $18,000);

2.      Newly-enrolled immigrant students aged 17 to 21 placed at Phoenix Academy during the 2016-2017 school year ("2016-17 Immigrant Students Placed at Phoenix"), shall be eligible to receive $1,500 each (estimated subtotal of $16,500);

3.      Immigrant students ages 17-21 who went to the District for enrollment between 2013 and the Effective Date, but who were never enrolled ("Immigrant Youth Never Enrolled"), shall be eligible to receive $1,000 each (estimated subtotal of $32,000).

C.      Within 30 days of the Effective Date of this Consent Decree, the District shall provide to Plaintiffs' counsel a list of the available identifying information regarding both the 2016-17 Immigrant Students Placed at Phoenix and the Immigrant Youth Never Enrolled. Identifying information shall include, if available in the District's records: each person's name, age, native language, last known address, last known telephone number, and the names of his or her parent(s) and any other advocate or contact person associated with their school enrollment inquiry.

D.      Eligible Students must give the District notice of their intent to use funds for an educational program by submitting the appropriate Intent to Use EL Compensatory Education Services Form (attached to Consent Decree as Exhibits D, E and F) to the designated Trust Administrator by June 30, 2018, and must utilize funds for any educational purpose by June 30, 2021.

E.      Funding shall not be provided by the Fund Administrator until an Intent to Use EL Compensatory Education Services Form is submitted by a student and approved by the Fund Administrator, and an invoice, receipt or request for payment (as required by such Form) has been provided to the Fund Administrator.

F.      To the extent any portion of the compensatory education program fund has not been committed for utilization through the submittal of Intent to Use EL Compensatory Education Services forms as of June 30, 2018, such remaining portion shall be returned to the District.  In addition, any portion of the compensatory education program fund that is not utilized by June 30, 2021, shall be returned to the District.

G.      The compensatory education fund described herein shall be used wholly and exclusively for educational purposes, which may include tuition for any educational program including post-secondary programs, vocational training/services, therapeutic and/or remedial instruction, programs, courses, services and materials, ESL programs, and cyber-based programs and related technology to support cyber-based programs but only if such programs further the goals of the student's education or language development, or will assist the student in achieving some educational goal. While compensatory education may be used as stated above for technology purchases such as computers, printers and educational software, it may not be used to purchase non-educational technology or software, such as an I-Phone or I-pad.    The Parties

agree that the compensatory education fund described herein shall not be used to fund, pay

and/or reimburse purchases of any phones, non-educational software, including computer games,

or for any non-educational purpose, such as, but not limited to attorney's fees, vehicles of any

kind, home improvements, furniture of any kind or leisure travel.

     H.     The Fund Administrator will quarterly provide to the District and Plaintiffs'

counsel (a) copies of Intent to Use Compensatory Education Forms received during such quarter,

and (b) data substantiating the use of compensatory education funds to date.  Said data shall

include a description of requests and expenditures, the programs or services provided, the dates

of purchase, refusals of requests, and the cost, and shall include the supporting invoices and

receipts required to be submitted to the Fund Administrator pursuant to such Forms.

     I.     Under no circumstances shall the District be required to pay more than $66,500

into the compensatory education program fund.  Any students receiving money from the fund

shall be required to waive and release claims against the District for additional compensatory

education for 2013 through June 2017 relating to or arising from claims brought against the

District in this settled litigation.

## VII.  <u>FORMS</u>

     The Forms attached to this Consent Decree as Exhibits A through F have been agreed

upon by the District and Plaintiffs' counsel, and shall not be altered by the District without

written agreement by Plaintiffs' counsel.

## VIII.  <u>CERTIFICATION OF TEACHERS</u>

     The District shall ensure that all ESL teachers serving immigrant students aged 17 to 21

are certified by the Pennsylvania Department of Education to teach ESL, in accordance with

state requirements and guidance and that all other teachers are properly certified to teach their

assigned subjects in accordance with applicable standards.

## IX.  DURATION OF THIS CONSENT DECREE

A.      This Consent Decree is effective immediately upon the signature of the Court

("Effective Date").

B.      Without further action by the Court, this Consent Decree shall expire on June 30,

2019.

## X.  MONITORING AND REPORTING

A.      Monitoring and reporting shall begin in August in anticipation of the 2017-2018

school year. Monitoring reports shall be due on August 18th, September 8th and monthly

beginning on October 15th for the 2017-2018 school year.  Reports shall be submitted quarterly

during the 2018-2019 school year, and continue thereafter quarterly if the Consent Decree is

extended by order of the Court (unless stated otherwise in such extension order). In accordance

with this schedule, the District shall provide Plaintiffs' counsel with a report, within at most 15

days of the end of the preceding reporting period, which includes the following information for

such preceding period:

1.      The number of immigrant youth aged 17-21 requesting new enrollment in

the District;

2.      The number of newly-enrolling students, who, upon application to the

District, were aged 17-21 and whose HLS indicated a home language other than English,

disaggregated by the student's: (a) age upon application; (b) home language; (c) score on the W-

APT; and (d) school placement.  The report shall include the student's name and contact

information including address, phone number(s), email address; country of origin; and the date

of each student's: (i) initial application to the District; (ii) formal enrollment; and (iii) first day of

class attendance at the student's school placement.  Pursuant to Section X.A.9 below, students

and their parents shall be advised that such information will be shared with Plaintiffs' counsel.

        3.      The number of immigrant students who transferred from the Newcomer

Program at McCaskey East to another Small Learning Community at McCaskey during the

preceding reporting period, disaggregated by the student's: (a) age on the date of transfer; (b)

WIDA Level on the date of transfer; and (c) home language;

        4.      The number of immigrant students who transferred from the Newcomer

Program at McCaskey East to Phoenix Academy (or to any other alternative education program

operated by or for the District) during the preceding reporting period, disaggregated by the

student's: (a) age on the date of transfer; (b) WIDA Level on the date of transfer; and (c) home

language;

        5.      The number of immigrant students who transferred from a Small Learning

Community at McCaskey (not including the Newcomer Program) to Phoenix Academy (or to

any other alternative education program operated by or for the District) during the preceding

reporting period, disaggregated by the student's: (a) age on the date of transfer; (b) WIDA Level

on the date of transfer; and (c) home language;

        6.      A copy of all signed EL Immigrant Election Forms for SY 2017-18 and

EL Placement Forms received during such reporting period;

        7.      The number of total pupils assigned to any age-cohort class on the

McCaskey campus that includes any immigrant students aged 19-21.

        8.      For the August 18, 2017, report, the District shall provide information

about all students covered by this Agreement dating back to January 1, 2017.   However,

retroactive information shall not result in any violation of this Agreement, which pertains to prospective duties of the District. Thereafter, reports shall provide information covering the intervening reporting period.

9.     The Parties acknowledge that federal and state law, including the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"), governs the disclosure of student education records.  Pursuant to FERPA regulations, 34 C.F.R. § 99.31(a)(9), the District may provide the information required pursuant to the Consent Decree, after providing notification through Exhibits A, B, C or through other means that such information will be provided, so that a parent or eligible student under FERPA has opportunity to seek protective action.  Further, the District's production of signed school placement forms and other identifying information shall be made pursuant to the protective order entered by the Court and attached as Exhibit H to this Consent Decree.

10.     The District shall designate a specific employee who shall be charged with the duty to monitor and provide reports required under this Consent Decree.

## XI. <u>ENFORCEMENT</u>

A.     The Parties consent to the jurisdiction of this Court over any proceedings seeking to enforce the terms of this Consent Decree.

B.     In the event of material non-compliance by the District, which is not remedied within fourteen days of the District's receipt of written notice specifying such non-compliance, Plaintiffs may petition this Court for an extension of the Consent Decree beyond June 30, 2019.

C.      In the event the Court finds that a party has not complied with a material provision of this Consent Decree, which is not remedied within fourteen days of the non-compliant party's receipt of written notice of such non-compliance, the Court shall have the

power to order specific performance of the provision and/or any other relief the Court deems necessary to ensure compliance.

## XII.  <u>NOTICE TO COUNSEL</u>

A.     Notices and other written communications pursuant to this Consent Decree shall be in writing.

B.     Notice to the District shall be addressed to the Superintendent of the School District of Lancaster, with a copy to the District's Solicitor (Howard L. Kelin, Esq., Kegel Kelin Almy & Lord LLP, 24 North Lime Street, Lancaster, PA 17602, kelin@kkallaw.com).  Notice to Plaintiffs shall be addressed to Maura McInerney, Esq., Witold J. Walczak, Esq. and Kathleen A. Mullen, Esq., at the addresses specified in the signature pages of this Consent Decree.

C.     The District's Solicitor shall notify Plaintiffs' counsel in the event of a change in the District's Superintendent or Solicitor, and Plaintiffs' counsel shall notify the District's Solicitor in the event substitution is to be made in Plaintiffs' counsel to receive communications under this Consent Decree, and in either event the new names and contact information shall be provided.

## XIII.  <u>MODIFICATION</u>

This Consent Decree may not be modified without the written consent of the Parties and the approval of the Court.

## XIV.  <u>RESERVATION OF JURISDICTION</u>

Upon approval of the Consent Decree by the Court, the Parties shall execute, deliver, and file a stipulation of resolution of the Action, substantially in the form attached hereto as Exhibit G.  The Court shall retain jurisdiction of the Action to enforce this Consent Decree, and the protective order attached as Exhibit H.  The Court may, for administrative purposes, mark the

case as closed and discontinued.  The parties may, consistent with the terms of this Consent

Decree, reopen the proceedings to enforce the terms herein.

## XV.  RELEASE OF CLAIMS

In consideration of the rights and obligations set forth herein, Plaintiffs, their successors,

assigns, heirs, executors, administrators, and legal representatives, with the intent to be legally

bound hereby, fully and forever release, acquit, discharge and hold harmless Defendant District,

and any and all of their agents, servants, employees, officials, officers, directors and assigns,

from any and all actions, causes of action, claims, demands, damages, or costs relating to the

facts set forth in the Complaint which were raised on their behalf by Named Plaintiffs, including

but not limited to any causes of action, claims, demands, damages or costs relating to the Equal

Education Opportunity Act, 20 U.S.C. § 1701 *et seq.* (Count One of the Complaint)*,* Title VI of

the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (Count Two of the Complaint), the Due

Process Clause of the Fourteenth Amendment to the United States Constitution (Count Three of

the Complaint), the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution (Count Four of the Complaint), and Pennsylvania Public School Code § 1301 and

22 Pa. Code Chapter 11 (Count Five of the Complaint).

## XVI.  ATTORNEYS' FEES AND COSTS

A.    The District shall arrange for payment of attorneys' fees to Plaintiffs in the

amount of $300,000, and payment of litigation costs to Plaintiffs in the amount of $70,000, and

such payments shall be full satisfaction of Plaintiffs' outstanding fees and costs.

B.    The District shall make payment of the $70,000 for litigation costs within 7 days

of the Effective Date, and shall arrange for its insurance carrier to make payment of the $300,000

for attorneys' fees within 45 days of the Effective Date, through checks payable in such amounts

to Pepper Hamilton LLP, delivered to Kathleen A. Mullen, Esq., at Pepper Hamilton LLP, Suite 200, 100 Market Street, P.O. Box 1181, Harrisburg, PA 17108-1181.

       C.      In the event of material non-compliance by the District, which is not remedied within fourteen days of the District's receipt of written notice specifying such non-compliance, Plaintiffs reserve the right to request additional attorneys' fees and costs for any time reasonably incurred thereafter to enforce implementation of the terms of the Consent Decree.

## XVII.  NON-WAIVER PROVISIONS

       A.      This Consent Decree does not limit or affect the rights and remedies of any persons who are not a party to this Consent Decree.

       B.      The failure by any party to enforce any provision of the Consent Decree with respect to any deadline or other provision herein shall not be construed as a waiver of their right to enforce deadlines or provisions of this Consent Decree.

## XVIII.  ENTIRE AGREEMENT

       This Consent Decree, along with its exhibits, embodies the entire agreement of the Parties. No prior or contemporaneous agreements, oral or written, entered into prior to the execution of this Consent Decree regarding the subject matter of this Action shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein. Captions are included herein solely for convenience of reference, and shall not be used to limit the terms of the Consent Decree.

## XIX.  EXECUTION

       This Consent Decree may be executed in multiple counterparts, and faxed, electronic, and/or emailed signatures will be valid and enforceable, each of which shall be deemed an original, and all of which shall constitute one and the same document.

Dated: June 28, 2017                    For the Plaintiffs,


                                        /s/ Witold J. Walczak
                                        Witold J. Walczak, Esquire (PA62976)
                                        American Civil Liberties Union of
                                        Pennsylvania
                                        247 Fort Pitt Blvd.
                                        Pittsburgh, PA 15222
                                        Telephone: (412) 681-7736
                                        Fax: (412) 681-8707
                                        VWalczak@aclupa.org

                                        Molly Tack-Hooper, Esquire (PA307828)
                                        Michelin Cahill, Esquire (PA 314553)
                                        American Civil Liberties Union of
                                        Pennsylvania
                                        P.O. Box 60173
                                        Philadelphia, PA 19102
                                        Telephone: (215) 592-1513
                                        Fax: (215) 592-1343
                                        MTack-Hooper@aclupa.org
                                        MCahill@aclupa.org

                                        /s/ Kathleen A. Mullen
                                        Thomas B. Schmidt, III (PA 19196)
                                        Kathleen A. Mullen (PA84604)
                                        PEPPER HAMILTON LLP
                                        Suite 200, 100 Market Street
                                        P.O. Box 1181
                                        Harrisburg,  PA  17108-1181
                                        Telephone: (717) 255.1155
                                        Fax: (717) 238.0575
                                        schmidtt@pepperlaw.com
                                        mullenk@pepperlaw.com

Kaitlin M. Gurney (PA309581)
Megan Morley (PA321706)
Hedya Aryani (PA 306616)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Fax: (215) 981-4750
gurneyk@pepperlaw.com
morleym@pepperlaw.com
aryanih@pepperlaw.com


/s/ *Maura McInerney*
Maura McInerney, Esquire (PA71468)
Kristina Moon, Esquire (PA306974)
Alex Dutton, Esquire (PA267321)
Education Law Center
1315 Walnut Street Suite 400
Philadelphia, PA 19107
Telephone: (215) 238-6907
Fax: (215) 772-3125
mmcinerney@elc-pa.org
kmoon@elc-pa.org
adutton@elc-pa.org


/s/ *Seth F. Kreimer*
Seth F. Kreimer, Esquire (PA26102)
3501 Sansom Street
Philadelphia, PA 19104
Telephone: (215) 898-7447
skreimer@law.upenn.edu


*Attorneys for Plaintiffs Khadidja Issa; Q.M.H., a minor, individually, by and through his parent, Faisa Ahmed Abdalla; V.N.I., a minor, individually by and through her parent Mar Ki; and Sui Hnem Sung.*

Dated: June 28, 2017                          For the Defendant,

                                             /s/ *Sharon M. O'Donnell*
                                             Sharon M. O'Donnell, Esquire (PA79457)
                                             Marshall Dennehey Warner Coleman &
                                             Goggin
                                             100 Corporate Center Drive, Suite 201
                                             Camp Hill, PA 17011
                                             Telephone: (717) 651-3503
                                             Fax: (717) 651-3707
                                             smodonnell@mdwcg.com

This Order is hereby APPROVED on this ____ day of June 2017, and the relief set forth herein
is GRANTED.

                              _____
                              Hon. Edward Smith, U.S.D.J.